**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EDGARDO TELLEZ and JAIME NARANJO PAREDES,
*on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*

Plaintiffs,

v.

MISSION CEVICHE, LLC
d/b/a MISSION CEVICHE,
MISSION CEVICHE UES INC
d/b/a MISSION CEVICHE,
MISSION CEVICHE CANAL LLC
d/b/a MISSION CEVICHE,
MISSION CEVICHE NOMAD LLC
d/b/a MISSION CEVICHE,
d/b/a SUB-MISSION,
JOSE LUIS CHAVEZ, and
BRICE MASTROLUCA,

Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff EDGARDO TELLEZ and Plaintiff JAIME NARANJO PAREDES (herein, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, MISSION CEVICHE, LLC d/b/a MISSION CEVICHE, MISSION CEVICHE UES INC d/b/a MISSION CEVICHE, MISSION CEVICHE CANAL LLC d/b/a MISSION CEVICHE,

MISSION CEVICHE NOMAD LLC d/b/a MISSION CEVICHE, d/b/a SUB-MISSION ("Corporate Defendants"), JOSE LUIS CHAVEZ, and BRICE MASTROLUCA ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and state as follows:

**INTRODUCTION**

1. Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime wages due to time-shaving; (2) unpaid wages due to improperly deducted meal credits; (3) illegal retention of gratuities; (4) unpaid wages, including overtime, due to an invalid tip credit; (5) liquidated damages; and (6) attorneys' fees and costs.

2. Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages including overtime due to time-shaving; (2) unpaid spread of hours premiums, (3) unpaid minimum wages due to an invalid tip credit; (4) unpaid wages due to improperly deducted meal credits; (5) illegal retention of gratuities; (6) statutory penalties; (7) liquidated damages; and (8) attorneys' fees and costs.

3. Based on prior agreements, the class and collective claims alleged herein were tolled as of October 19, 2023, and an additional nine months due to Covid tolling. *See Flores v. Mission Ceviche, LLC et al,* Case No. 1:24-cv-03626-AS, ECF No. 1-5. *See also* Governor Cuomo's Executive Order No. 202.8 tolling the statute of limitations for applicable claims starting March 20, 2020, and the nine Executive Orders which extended Executive Order No. 202.8's tolling of the statute of limitations through November 3, 2020.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

6. Plaintiff EDGARDO TELLEZ is a resident of Kings County, New York.

7. Plaintiff JAIME NARANJO PAREDES is a resident of Queens County, New York.

8. At all relevant times, Defendants JOSE LUIS CHAVEZ, and BRICE MASTROLUCA owned and operated four MISSION CEVICHE restaurants throughout New York City.

9. Corporate Defendant MISSION CEVICHE, LLC d/b/a MISSION CEVICHE is a domestic limited liability company with a principal place of business located at 1400 2nd Ave, New York, NY 10021, and the address of service at c/o United States Corporation Agents, Inc., 7014 13th Avenue, Suite 202, Brooklyn, NY 11228.

10. Corporate Defendant MISSION CEVICHE UES, INC. d/b/a MISSION CEVICHE is a domestic limited liability company with a principal place of business located at 1400 2nd Ave, New York, NY 10021, and the address of service at c/o Brice Mastroluca, 353 West 14th Street, New York, NY 10014.

11. Corporate Defendant MISSION CEVICHE CANAL LLC d/b/a MISSION CEVICHE a domestic limited liability company with a principal place of business located at 261 Canal Street, New York, NY 10013, and the registered address at c/o Brice Mastroluca, 353 West 14th Street, New York, NY 10014.

12. Corporate Defendant MISSION CEVICHE NOMAD LLC d/b/a MISSION CEVICHE is a domestic limited liability company with a principal place of business located at 7 E 17th Street, New York, NY 10003, and the address of service at c/o Brice Mastroluca, 1400 Second Ave, New York, NY 10021. Defendants location SUB-MISSION is also located at 7 E 17th Street, New York, NY 10003, and operated by MISSION CEVICHE NOMAD LLC.

13. Individual Defendant JOSE LUIS CHAVEZ is the owner and principal of the Corporate Defendants. JOSE LUIS CHAVEZ exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. JOSE LUIS CHAVEZ had the power and authority to (i) fire and hire employees, (ii) supervise and control Plaintiffs', FLSA Collective Plaintiffs' and Class members' schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms and conditions of employment for Plaintiffs, FLSA Collective Plaintiffs and Class members at Defendants' restaurants.

14. Individual Defendant BRICE MASTROLUCA is the owner and principal of the Corporate Defendants. BRICE MASTROLUCA exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. BRICE MASTROLUCA exercised functional control over the business and financial operations of the Corporate Defendant. BRICE MASTROLUCA had the power and authority to (i) fire and hire employees, (ii) supervise and control Plaintiffs', FLSA Collective Plaintiffs' and Class members' schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms and conditions of employment for Plaintiffs, FLSA Collective Plaintiffs and Class members at Defendants' restaurants.

15. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

16. Defendants BRICE MASTROLUCA and JOSE LUIS CHAVEZ, own and operated MISSION CEVICHE, located at four (4) locations in New York City:

a. Mission Ceviche Restaurant – 1400 2nd Ave, New York, NY 10021 ("Upper East Side");

b. Mission Ceviche Restaurant – 7 East 17th Street, New York, NY 10003 ("Union Square");

c. Mission Sub-Mission – 7 East 17th Street, New York, NY 10003 ("Sub-Mission");

d. Mission Ceviche Restaurant – 261 Canal Street, New York, NY 10013 ("Canal Street"); and

e. Mission Ceviche Restaurant – 353 West 14th Street, New York, NY 10014 ("W14th St") (collectively, the "Restaurants").

17. Defendants' Canal Street and W14th St locations closed for business in 2019. Currently, Defendants operate MISSION CEVICHE restaurants at their Upper East Side location and the Union Square location.

18. All the Restaurants have been owned, managed, and operated by Individual Defendants JOSE LUIS CHAVEZ and BRICE MASTROLUCA. All the locations have been operated under the name MISSION CEVICHE. Defendants engaged in identical activities, shared common ownership and have a common business purpose:

a) All the Restaurants were jointly shown on a common website: https://missionceviche.com/locations/. *See* **Exhibit A:** Screenshot of the location page;

b) All the locations had a common menu;

c) All the locations were advertised as one entity with different locations. *See* **Exhibit B:** News Articles;

d) The Restaurants share common ownership through Individual Defendants. *See* **Exhibit C**;

e) The Individual Defendants BRICE MASTROLUCA and JOSE LUIS CHAVEZ are listed as the principal(s) on the liquor license associated with the Defendants' current address of operation. *See* **Exhibit D**;

f) All the locations were advertised on a common Instagram page, https://www.instagram.com/missionceviche/?hl=en, and a common Facebook page, https://www.facebook.com/MissionCeviche/;

g) Defendants provided the same terms of employment to all employees;

h) Throughout their employment, Plaintiffs frequently witnessed Defendants freely transfer employees and managers between Mission Ceviche locations based on staffing needs; and

i) In a prior wage and hour case against Defendants, *Flores v. Mission Ceviche, LLC et al*, the court conditionally certified a class including employees from all Mission Ceviche locations because the plaintiff established that all locations operated as a single integrated enterprise. *See Flores v. Mission Ceviche, LLC et al*, Case No. 1:24-cv-03626-AS, ECF No. 48.

19. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA and NYLL and the regulations thereunder.

20. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt front-of-house and back-of-house employees (including waiting staff, delivery persons, line cooks, dish washers, servers, runners, bussers, porters, among others) employed by Defendants on or after the date that is six (6) years before the filing of this Complaint (herein, "FLSA Collective Plaintiffs").

22. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime wages, due to time shaving. With respect to employees who were subject to meal credit deductions from their wages, Defendants were not entitled to take any meal credits under the FLSA, because Defendants' meal credit policy fails to meet the "reasonable cost" requirement set forth in 29 CFR § 531.31. Further, with respect to tipped employees, Defendants were not entitled to take any tip credits under the FLSA, or to compensate Plaintiff TELLEZ and FLSA Collective Plaintiffs at a sub-minimum wage hourly rate, because they improperly retained gratuities, and failed to satisfy all statutory requirements for taking a tip credit.

23. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

24. The claims for relief are properly brought under and maintained as an opt-in collective

action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS – NEW YORK**

25. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including waiting staff, delivery persons, line cooks, dish washers, servers, runners, bussers, porters, among others) employed by Defendants at all locations, on or after the date that is six years before the filing of the Complaint (the "Class Period").

26. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

27. The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes two subclasses, each of which number over forty (40): a subclass of tipped employees ("Tipped Subclass"). While both Plaintiffs are members of the Class, Plaintiff TELLEZ is also a member of the Tipped Subclass.

28. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, including: (i) failing to pay all earned wages, including overtime wages, due to a policy of time shaving, (ii) failing to pay spread of hours premiums, (iii) improperly deducting meal credits, failing to provide wage statements in compliance with the NYLL, and (iv) failing to provide wage and hour notices upon hiring and as required thereafter, pursuant to the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

29. Additionally, Plaintiffs Class members also suffered as a result of Defendants' improper meal credit policy. Plaintiffs and Class members were subjected to Defendants' policy and practice of deducting meal credits despite Defendants' failure to observe requirements of the NYLL. Defendants' meal credit policy was improper because it failed to (i) meet the "reasonable cost"[1] requirement under the FLSA, (ii) satisfy New York State's nutritional requirements containing all four (4) food groups[2], and (iii) was implemented regardless of whether employees actually consumed the credited meals or not.

30. Furthermore, Plaintiff TELLEZ and the Tipped Subclass also suffered as a result of Defendants' failure to pay them the proper minimum wage, Defendants' unlawful withholding of gratuities through an invalid tip pooling scheme, and Defendants' unlawful misappropriation of

---

[1] 29 C.F.R. § 531.3
[2] 12 NYCRR § 146-3.7

the tips that they earned. Plaintiff TELLEZ and the Tipped Subclass members were subjected to Defendants' policy and practice of deducting a tip credit despite Defendants' failure to observe requirements of the NYLL. In violation of the NYLL, Defendants (i) failed to properly provide tip credit notice, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed tip credit for more than thirty (30) minutes of uninterrupted and continuous non-tipped work, (iv) implemented an invalid tip pool scheme whereby managers and non-tipped employees participated, (v) failed to accurately track daily tips earned or maintain records thereof, (vi) failed to properly provide tip credit notice at hiring and annually thereafter, and (vii) failed to provide a proper wage statement with every payment of wages informing Plaintiff TELLEZ and Class members of the amount of tip credit deducted for each payment period.

31. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

32. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

34. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiffs and the Class within the meaning of the NYLL;

b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

c. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class members for their work;

d. Whether Defendants properly notified Plaintiffs and Class members of their hourly rates and overtime rates;

e. Whether Defendants paid Plaintiffs and Class members the proper compensation for all the hours worked under the NYLL;

f. Whether Defendants properly compensated Plaintiffs and Class members the proper minimum wage under the NYLL;

g. Whether Defendants properly provided written notice to all tipped employees, in their native language, regarding Defendants' tip credit;

h. Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or 2 hours of their work shift;

i. Whether Defendants caused tipped employees to engage in non-tipped duties exceeding thirty (30) minutes continuously;

j. Whether Defendants instituted an improper tip pool whereby managers and/or non-tipped employees participated;

k. Whether Defendants operated their business with a policy of not compensating employees for all hours worked due to time-shaving;

l. Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

m. Whether Defendants illegally retained gratuities to pay other employees;

n. Whether Defendants properly satisfied New York State's nutritional requirements containing all four (4) food groups for meals provided to employees;

o. Whether employees actually consumed the credited meals provided by Defendants; and

p. Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under the NYLL and applicable state laws.

## STATEMENT OF FACTS

*Plaintiff EDGARDO TELLEZ ("Plaintiff TELLEZ")*

35. In or around August 2020, Plaintiff TELLEZ was hired by Defendants to work as a Busboy and Runner for Defendants' Mission Ceviche restaurant, located at 1400 2nd Ave, New York, NY 10021. Plaintiff TELLEZ worked for Defendants until around April 2021.

36. At all relevant times, Plaintiff TELLEZ was compensated at the prevailing tipped credit minimum wage rate of ten dollars ($10.00) per hour. FLSA Collective Plaintiffs and Tipped Subclass Members were similarly paid by Defendants at tipped credit rates.

37. Throughout his employment, Plaintiff TELLEZ was typically scheduled to work from 3:00 p.m. to 11:00 p.m., six (6) days each week, for a total of forty-eight (48) hours per week. Additionally, at least once every eight (8) weeks, Plaintiff TELLEZ was scheduled to work a double shift lasting twelve and one-half (12.5) hours, from 11:00 a.m. to 12:00 a.m. At all relevant times, FLSA Collective Plaintiffs and Class Members were scheduled to work similar hours.

*Plaintiff JAIME NARANJO PAREDES ("Plaintiff PAREDES")*

38. Sometime in 2021, Plaintiff PAREDES was hired by Defendants to work part-time as a Line Cook for Defendants' Mission Ceviche restaurant, located at 1400 2nd Ave, New York, NY 10021. Plaintiff PAREDES worked for Defendants for around one and one-half (1.5) years, until sometime in 2023.

39. At all relevant times, Plaintiff PAREDES was compensated at an hourly rate of twenty dollars ($20.00). FLSA Collective Plaintiffs and Class Members holding back-of-house positions were compensated at similar rates.

40. Throughout his employment, Plaintiff PAREDES was scheduled to work from 4:00 p.m. to 12:00 a.m., two (2) days a week, for a total of sixteen (16) hours per week. At all relevant times, other part-time employees, including FLSA Collective Plaintiffs and Class Members, were scheduled to work similar hours.

*Unpaid Wages, Due to Time Shaving*

41. Plaintiffs, FLSA Collective Plaintiffs, and Class members were not paid all of their wages or their overtime premiums at the rate of time and one half of the regular hourly rate, for all hours worked, due to Defendants' policy of clocking out Plaintiffs and Class members at the end of their shift but requiring them to engage in off-the-clock work. For example, once every week, Plaintiff TELLEZ was required to stay back for approximately thirty (30) minutes but was required to continue performing work duties. Plaintiffs, FLSA Collective Plaintiffs, and Class members were similarly required to clock-out for approximately thirty minutes a week but were not compensated for the work they performed after clocking out.

*Unpaid Wages, due to an Invalid Tip Credit Policy*

42. Plaintiff TELLEZ's, Tipped FLSA Collective Plaintiffs', and Tipped Subclass members' tip-credit was invalid as they were not provided all overtime earnings owed to them. When Plaintiff, Tipped FLSA Collective Plaintiffs, and Tipped Subclass members were paid for hours over forty in a workweek, they were at an impermissibly low overtime rate. Both the Fair Labor Standards Act of 1938, 29 U.S.C.S. § 201 *et seq*. (FLSA), and regulations issued pursuant to the New York Labor Law require an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty per work week. 29 U.S.C. § 207(a)(1); 12 NYCRR § 146-1.4. For tipped employees, the overtime rate is calculated by taking the employee's regular rate of pay ***before*** subtracting any tip credit, multiplying that rate of pay by one-and-one-half, and only then subtracting a tip credit. 29 U.S.C.S. § 203(m); 29 C.F.R. §§ 531.60, 778.5 (FLSA); 12 NYCRR § 146-1.4 (New York Labor Law). Consequently, under both federal and state law, it is a violation of the overtime requirement for an employer to subtract the tip credit first and then multiply the reduced rate of pay by one-and-one-half. 12 NYCRR § 146-1.4. Here, to find the tipped employees' overtime rate, Defendants improperly subtracted the tip credit from the employees' rate of pay prior to multiplying the employees pay rate by one-and-one-half.

43. To be clear, the overtime rate for tip-credit employees is properly calculated by taking the employee's base rate of pay (for Plaintiff TELLEZ, $15.00 an hour) multiplying that figure by one-and-one-half (which would be $22.50), and only then subtracting the permitted tip credit (for Plaintiff TELLEZ, $5.00) from the employees' base overtime rate ($22.50 - $5.00 = $17.50). By subtracting the tip credit ($5.00) from the base rate of pay ($15.00 - $5.00 = $10.00) prior to

multiplying by one-and-one-half ($10.00 x 1.5 = $15.00), employees are compensated overtime at an impermissibly low rate of pay.

44. Tipped FLSA Collective Plaintiffs' and Tipped Subclass members' tip-credit would be invalid due to suffering similar undercalculations of overtime as Plaintiff TELLEZ.

45. Furthermore, Defendants were not entitled to deduct tip credits from tipped employees' wages because Defendants frequently required said employees to engage in over thirty (30) minutes of continuous non-tipped work. Once every week, tipped employees were required to arrive early to service to help set up the kitchen and restaurant. Moreover, after service, tipped employees had to stay at least thirty (30) minutes to help clean up the premises. For example, Plaintiff TELLEZ was required to wash and polish silverware for up to an hour for every shift he worked. Plaintiff TELLEZ, Tipped FLSA Collective Plaintiffs, and Tipped Subclass members suffered from approximately an hour of unpaid minimum wage per week, due to Defendants' invalid tip credit policy.

*Unpaid Wages due to Tip Retention*

46. Throughout Plaintiffs' employment, Defendants retained a percentage of all tips to pay non-tipped employees (e.g., kitchen staff, cleaners). Plaintiffs had missing tips in every paycheck amounting to or around hundred dollars ($100) per week. Tipped FLSA Collective Plaintiffs and the Tipped Subclass similarly suffered from Defendants' illegal tip retention.

47. Throughout Plaintiffs' employment, Defendants maintained a tip pool that included maitre'd and managers, in violation of FLSA and NYLL. Tipped FLSA Collective Plaintiffs and the Tipped Subclass similarly suffered from Defendants implementing an invalid tip pool with non-tipped employees.

48. Throughout Plaintiffs' employment, Defendants failed to appropriately maintain records of the tips earned by employees, leading to a discordant system and loss of wages to Plaintiffs, tipped FLSA Collective Plaintiffs and Tipped Subclass Members.

49. Defendants knowingly and willingly operated their business with a policy of not paying employees all gratuities owed, due to illegal tip retention, in violation of the FLSA and the NYLL.

*Unpaid Wages due to Improper Meal Credit Deductions*

50. Throughout Plaintiff's employment, Defendants improperly deducted a meal credit from Plaintiffs' wages under FLSA § 203(m) and 12 NYCRR § 146-1.9, without regard to whether the meal credit deducted exceeds the meals' "reasonable cost"[3], whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups[4], and whether employees actually consumed the credited meals or not. FLSA Collective Plaintiffs and Class members similarly had meal credits improperly deducted from their wages. Plaintiffs, FLSA Collective Plaintiffs, and Class members were mostly served leftover meals that did not fulfil the nutritional requirements under the FLSA and NYLL. Defendants claimed ten dollars ($10) towards a meal credit from Plaintiffs for every week, but Defendants did not provide a sufficient quantity of meals for all employees. Moreover, Plaintiffs, FLSA Collective Plaintiffs, and Class members were not provided with a free and clear lunch break, and Defendants were deducting meal credits knowing that Plaintiffs, FLSA Collective Plaintiffs, and Class members could not avail themselves of the benefits of the meal credit so deducted. Additionally, Defendants also did not maintain

[3] 29 C.F.R. § 531.3
[4] 12 NYCRR § 146-3.7

appropriate records of the costs of the meals that were supposed to be provided to Plaintiffs, FLSA Collective Plaintiffs and Class Members.

51. Defendants knowingly and willfully operated subjected Plaintiffs, FLSA Collective Plaintiffs, and Class members to an invalid meal credit policy, in violation of the FLSA and NYLL.

*Unpaid Spread of Hours Premiums*

52. At all relevant times, Defendants failed to compensate Plaintiff TELLEZ and Class members with spread of hours premiums for all workdays with a spread of ten (10) or more hours, in violation of the NYLL.

53. Throughout their employment, around once every eight (8) weeks, Plaintiff TELLEZ was required to work a double shift from 11:00 a.m. to 12:00 a.m. Despite these shifts lasting twelve and one-half (12.5) hours, Defendants never compensated Plaintiff TELLEZ with spread of hours premiums for these shifts.

54. Similarly, Defendants failed to compensate Class members with spread of hours premiums for workdays lasting over ten (10) hours.

*Plaintiffs' and Class Members' Wage Theft Prevention Act Claims:*

55. At all relevant times, Defendants failed to provide wage notices and accurate wage statements to Plaintiffs and Class Members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL.

56. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements

might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

57. New York courts continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, at *61 (S.D.N.Y. February 23, 2026) (internal citations omitted).

58. Here, Defendants' conduct is has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiffs and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiffs and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiffs and Class Members which accurately listed the total number of hours Plaintiffs and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

59. By failing to report all of Plaintiffs' and Class Members' hours, Defendants were able to reduce the employee earnings that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social

security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiffs and Class Members were irreversibly injured with respect to their Social Security benefits—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

60. Furthermore, Defendants failed to provide any wage notices to Plaintiffs or Class Members. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiffs and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiffs and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

61. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiffs and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

62. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**
**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

63. Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

64. At all relevant times, Defendants were and continue to be employers engaged in

interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

65. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

66. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

67. At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiffs and FLSA Collective Plaintiffs for all hours worked, due to time shaving.

68. At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff TELLEZ and a subcollective of FLSA Collective Plaintiffs, due to an invalid tip credit policy.

69. At all relevant times, Defendants had a policy and practice that illegally retained gratuities from Plaintiff TELLEZ and a subcollective of FLSA Collective Plaintiffs.

70. At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiffs and FLSA Collective Plaintiffs regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiffs and FLSA Collective Plaintiffs consumed the meals in question.

71. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then

seek leave of Court to amend this Complaint to set forth the precise amount due.

72. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages, including their proper overtime premiums, when Defendants knew or should have known such was due.

73. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

74. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

75. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, unpaid wages and overtime due to time-shaving, unpaid wages and overtime due to an invalid tip credit, illegally retained gratuities, and unpaid wages due to improperly deducted meal credits, plus an equal amount as liquidated damages.

76. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**
**VIOLATION OF THE NEW YORK LABOR LAW**

77. Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

78. At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

79. At all relevant times, Defendants engaged in a policy and practice of refusing to pay

Plaintiffs and Class Members for all hours worked, due to time shaving, in direct violation of the NYLL.

80. At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiff TELLEZ and Tipped Subclass members the proper minimum wage and overtime due to an invalid tip credit in direct violation of the NYLL.

81. Defendants willfully violated the rights of Plaintiff TELLEZ and Tipped Subclass members by illegally retaining gratuities, in direct violation of the NYLL.

82. Defendants failed to properly notify Plaintiff TELLEZ and the Tipped Subclass of their tip pooling policies, in direct violation of the NYLL.

83. Defendants willfully violated Plaintiffs' and Class members' rights by improperly deducting meal credits from Plaintiffs and Class members regardless of whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiffs and Class members consumed the meals in question.

84. Defendants willfully violated Plaintiff TELLEZ and Class members' rights by failing to pay them their properly owed spread of hours premiums.

85. Defendants failed to properly notify employees of their overtime rate, in direct violation of the New York Labor Law.

86. Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

87. Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the New York Labor Law.

88. Due to Defendants' New York Labor Law violations, Plaintiffs and Class members

are entitled to recover from Defendants, unpaid wages due to an invalid tip credit, unpaid wages due to improperly deducted meal credits, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award, pursuant to the FLSA and the NYLL, of unpaid wages, including overtime, due to timeshaving;

d. An award, pursuant the FLSA and the NYLL, of unpaid wages, including overtime, due to an invalid tip credit;

e. An award of gratuities illegally retained by Defendants, due under the FLSA and NYLL;

f. An award of unpaid wages due to improperly deducted meal credits, due under the FLSA and the New York Labor Law;

g. An award of unpaid spread of hours premiums, due under the NYLL;

h. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i. Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

j. Designation of this action as a class action pursuant to F.R.C.P. 23;

k. Designation of Plaintiffs as Representatives of the Class;

l. Designation of Plaintiff TELLEZ as Representative of the Tipped Subclass; and

m. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: May 1, 2026

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*